IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JAMES D. BLANTON,                    )
                                     )
                    Plaintiff,       )
                                     )
vs.                                  )        Case No. 08-4010-SAC
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of                      )
Social Security,                     )
                                     )
                    Defendant.       )
_____    )


RECOMMENDATION AND REPORT


    This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

    The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

2

gainful activity (SGA).  The claimant's physical or mental
impairment or impairments must be of such severity that they are
not only unable to perform their previous work but cannot,
considering their age, education, and work experience, engage in
any other kind of substantial gainful work which exists in the
national economy.  42 U.S.C. § 423(d).

     The Commissioner has established a five-step sequential
evaluation process to determine disability.  If at any step a
finding of disability or non-disability can be made, the
Commissioner will not review the claim further.  At step one, the
agency will find non-disability unless the claimant can show that
he or she is not working at a "substantial gainful activity."  At
step two, the agency will find non-disability unless the claimant
shows that he or she has a "severe impairment," which is defined
as any "impairment or combination of impairments which
significantly limits [the claimant's] physical or mental ability
to do basic work activities."  At step three, the agency
determines whether the impairment which enabled the claimant to
survive step two is on the list of impairments presumed severe
enough to render one disabled.  If the claimant's impairment does
not meet or equal a listed impairment, the inquiry proceeds to
step four, at which the agency assesses whether the claimant can
do his or her previous work; unless the claimant shows that he or
she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth
and final step requires the agency to consider vocational factors
(the claimant's age, education, and past work experience) and to
determine whether the claimant is capable of performing other
jobs existing in significant numbers in the national economy.
Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of
the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993).
At step five, the burden shifts to the Commissioner to show that
the claimant can perform other work that exists in the national
economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987
F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this
burden if the decision is supported by substantial evidence.
Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will
assess the claimant's residual functional capacity (RFC).  This
RFC assessment is used to evaluate the claim at both step four
and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

**II.  History of case**

On September 27, 2006, administrative law judge (ALJ) Jack
R. Reed issued his decision (R. at 16-24).  Plaintiff is insured
for disability insurance benefits through December 31, 2008 (R.
at 18).  At step one, the ALJ found that plaintiff did not engage
in substantial gainful activity since October 1, 2003, the

alleged onset date (R. at 18).  At step two, the ALJ found that plaintiff had the following severe impairments: migraine headaches, status post myocardial infarction with stent placement (R. at 18).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 19).  After determining plaintiff's RFC (R. at 19), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 23).  At step five, the ALJ found that plaintiff can perform other jobs that exist in significant numbers in the national economy (R. at 23-24).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 24).

**III.  Did the ALJ err in making his RFC findings and in his analysis of the medical evidence?**

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence."  The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  The RFC assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  SSR rulings are binding on an ALJ.  20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891

n.9, 107 L. Ed.2d 967 (1990); <u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  <u>See</u> <u>Southard v. Barnhart</u>, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. <u>Spicer v. Barnhart</u>, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  <u>Cruse v. U.S. Dept. of Health & Human Services</u>, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  <u>Brown v. Commissioner of the Social Security Administration</u>, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ made the following RFC findings concerning plaintiff:

6

> After careful consideration of the entire
> record, the undersigned finds that the
> claimant has the residual functional capacity
> to perform work of sedentary exertion in that
> he is able to lift and/or carry 10 pounds
> occasionally, a nominal amount frequently,
> stand and/or walk for 2 hours of an 8 hour
> workday and sit for 6 hours of an 8 hour
> workday provided he avoids bright light or
> sunlight.

(R. at 19).  After making these findings, the ALJ then summarized

the medical and other evidence in this case (R. at 19-23).

However, in violation of SSR 96-8p, the ALJ did not include a

narrative discussion describing how the evidence supported any of

his RFC findings.  Nothing in the ALJ's summary of the evidence

provides any indication of the basis for the ALJ's RFC findings.

The ALJ does not cite to any medical evidence in support of his

RFC findings.  It is insufficient for the ALJ to only generally

discuss the evidence, but to fail to relate that evidence to his

conclusions.  Cruse, 49 F.3d at 618.

In the case of Kency v. Barnhart, Case No. 03-1190-MLB (D.

Kan. Nov. 16, 2004), the record was devoid of any identifiable

discussion explaining how the ALJ arrived at his RFC conclusions

from the evidence or how the evidence supported his conclusions.

Kency, (Doc. 21 at 5).  In Kency, the court held as follows:

> ...the ALJ simply listed all the evidence
> contained in the record and then set forth
> his conclusion without explaining the
> inconsistencies and ambiguities contained in
> the opinions. He did not connect the dots, so
> to speak, as is required by S.S.R. 96-8p. It
> may well be that upon remand, the ALJ will

7

reach the same conclusion. Nevertheless,
S.S.R. 96-8p is defendant's requirement and
ALJs presumably are the experts whose
responsibility it is to know and follow
defendant's requirements...

Most important, the ALJ must explain how the
decision was reached. When an ALJ merely
summarizes the facts, notes that he has
considered all of the facts, and then
announces his decision, there is nothing for
the court to review. The court cannot know
how the ALJ analyzed the evidence. When the
evidence is contradictory or ambiguous, as it
is in most cases, the court cannot know which
evidence was given what weight, or how the
ambiguities were resolved. Therefore, to
determine whether substantial evidence
supports the conclusion, the court would have
to reweigh the evidence. Since that option is
precluded by law, the court can only remand
to the defendant for a proper explanation of
how the evidence was weighed and ambiguities
resolved.

Kency, (D. Kan. Nov. 16, 2004, Doc. 21 at 7, 9); see also Wolfe

v. Barnhart, Case No. 05-1028-JTM (Doc. 25 at 3, July 25,

2006)("It is insufficient for the ALJ to generally discuss the

evidence but fail to relate the evidence to his conclusions"). 

In Kency, the court held that it was not at all clear to the

court how the RFC, as a whole, was derived.  (Doc. 21 at 8).

Munday v. Astrue, 535 F. Supp.2d 1189, 1197 (D. Kan. 2007).

     In addition, the ALJ failed to mention or discuss a vision

impairment RFC questionnaire prepared by plaintiff's treating

opthamologist, Dr. Marefat on July 6, 2006; the ALJ thus failed

to offer any explanation for failing to include the limitations

set forth by Dr. Marefat in his RFC findings for the plaintiff.[1]
Dr. Marefat diagnosed loss of peripheral vision, significant in
both eyes, and indicated that plaintiff could rarely engage in
work involving depth perception, and could never engage in work
involving field of vision.  He opined that plaintiff was
incapable of avoiding ordinary hazards in the workplace, such as
boxes on the floor, doors ajar, or approaching people or
vehicles.  He indicated that plaintiff's peripheral vision would
make it difficult for him to walk up or down stairs.  He also
indicated that plaintiff could not work with small objects such
as those involved in doing sedentary work.  Finally, he indicated
that plaintiff's symptoms would frequently interfere with
attention and concentration needed to perform even simple work
tasks (R. at 553-555).

     An ALJ must evaluate every medical opinion in the record.
Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).  Even
on issues reserved to the Commissioner, including the RFC
determination and the ultimate issue of disability, opinions from
any medical source must be carefully considered and must never be
ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at
*2-3.

---

[1]Although the ALJ referenced other medical records from Dr.
Marefat, including Exhibits 8F, 9F, and 11F and 12F, the ALJ
failed to mention or discuss the limitations contained in Exhibit
14F, the vision impairment RFC questionnaire prepared by Dr.
Marefat (R. at 21).

As in <u>Kency</u> and <u>Munday</u>, it is not at all clear to the court how the RFC, as a whole, was derived in this case (Blanton). Furthermore, the ALJ ignored the RFC opinions expressed by Dr. Marefat and offered no explanation for not including his limitations in plaintiff's RFC.  Therefore, this case shall be remanded in order for the ALJ to comply with SSR 96-8p and SSR 96-5p.  The ALJ should examine, in light of the opinions of Dr. Marefat, whether plaintiff's vision impairment is a severe impairment, whether or not it meets or equals a listed impairment, and the limitations caused by this impairment.

The court will next discuss the weight accorded by the ALJ to the medical opinions of Dr. Zhao.  The ALJ discussed the medical opinions expressed by Dr. Zhao as follows:

> As for the opinion evidence, Dr. Zhao completed a Headaches Residual Functional Capacity Questionnaire dated August 25,2005, in which he provided the intensity of the headaches varied from day to day, occurred 2 to 3 times a week, and lasted 1 to 3 days. The claimant's headaches were triggered by bright lights, lack of sleep, noise, stress, and vigorous exercise. Other symptoms associated with the headaches included nausea/vomiting, photosensitivity, visual disturbances, mood changes, mental confusion/ inability to concentrate, and blurred vision. His symptoms did not seem to respond to headache pain management. Moreover, they lasted 1 to 3 days and were triggered by bright lights, lack of sleep, noise, stress, and vigorous exercise and lying in a dark room made then better. Dr. Zhao provided that positive test results and objective signs of headaches included impaired sleep. Furthermore, anxiety/tension and migraine

10

could reasonably be expected to explain the
claimant's headaches as well as factors
contributing to his headaches. Concerning his
ability to perform work-related activity, Dr.
Zhao opined the claimant would need to take
unscheduled breaks 2 to 3 times or more
during an 8 hour workday for an unknown
period of time depending on his symptoms and
would need to lie down. He based this on the
claimant's report of continued daily
headaches so he assumed he might not be able
to tolerate too much work related stress. He
noted the claimant had good and bad days and,
by his report, had worsened headaches with
daily activities (Exhibit 7F)...

In evaluating the opinion evidence, the
undersigned notes the only objective evidence
Dr. Zhao referenced was for sleep apnea
(Exhibit 7F). It also appears, Dr. Zhao's
opinion i[s] based solely on the claimant's
subjective complaints of chronic and severe
headaches. There is no objective study that
determines the etiology of headaches...
Notwithstanding the fact he is a treating
physician, the undersigned does not accord
controlling weight to the opinion of Dr. Zhao
as it is substantially based on the
subjective complaints of the claimant (SSR
96-2p).

(R. at 22-23).

The ALJ accurately summarized the report by Dr. Zhao, but

then found that Dr. Zhao's opinion was based solely on

plaintiff's subjective complaints.  The ALJ further found that

there was "no objective study that determined the etiology of

headaches" (R. at 22-23).  For these reasons, the ALJ did not

accord controlling weight to the opinions of Dr. Zhao, although

he acknowledged that plaintiff's migraine headaches were a severe

impairment (R. at 23, 18).

The court finds that the ALJ erred by discounting the
opinions of Dr. Zhao because there was no objective study that
determined the etiology of plaintiff's headaches.  There are some
conditions, such as migraine headaches, that cannot be diagnosed
or confirmed through laboratory or diagnostic techniques.  <u>Duncan
v. Astrue</u>, 2008 WL 111158 at *6 (E.D. N.C. Jan. 8, 2008).
Migraine headaches are particularly unsusceptible to diagnostic
testing.  <u>Wiltz v. Barnhart</u>, 484 F. Supp.2d 524, 532 (W.D. La.
2006).  Impairments, including migraines, need not be proven
through objective clinical findings or laboratory tests.
<u>Thompson v. Barnhart</u>, 493 F. Supp.2d 1206, 1215 (S.D. Ala. 2007);
<u>Ortega v. Chater</u>, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996).
Doctors diagnose migraines through the presence of medical signs
and symptoms such as nausea, vomiting, sensitivity to light and
sound, and photophobia.  <u>See Duncan</u>, 2008 WL 111158 at *6; <u>Ortega
v. Chater</u>, 933 F. Supp. at 1075.  Since present-day laboratory
tests cannot prove the existence of migraine headaches, these
medical signs are often the only means available to prove their
existence.  <u>Ortega</u>, 933 F. Supp.2d at 1075.

In the case before the court (Blanton), Dr. Zhao found and
the ALJ acknowledged that plaintiff had the following symptoms
associated with plaintiff's headaches: nausea/vomiting,
photosensitivity, visual disturbances, mood changes, mental
confusion/inability to concentrate and blurred vision, and that

bright lights and noise triggered the headaches and made them worse (R. at 22, 328).  These symptoms are similar to those noted in Duncan and Ortega.  Since laboratory or diagnostic tests cannot prove the existence of migraine headaches, these signs and symptoms are the only means available to diagnose migraine headaches.  Thus, the lack of an "objective study" to determine the etiology of headaches cannot serve as a valid basis to discount the opinions of Dr. Zhao.  Therefore, this case shall be remanded in order for the ALJ to give proper consideration to the opinions of Dr. Zhao.

Furthermore, although the ALJ stated that he was not giving controlling weight to the opinions of Dr. Zhao, he failed to indicate what weight, if any, he was according to Dr. Zhao's opinions.  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).  A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

13

(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).
After considering the above factors, the ALJ must give good
reasons in his decision for the weight he ultimately assigns the
opinion.  If the ALJ rejects the opinion completely, he must then
give specific, legitimate reasons for doing so.  Watkins, 350
F.3d at 1301.  Therefore, on remand, the ALJ must specify what
weight he is according to the opinions of Dr. Zhao and give good
reasons for the weight he ultimately assigns to his opinions.

     Finally, the ALJ did not give controlling weight to the
opinions of Dr. Zhao because the ALJ found that Dr. Zhao's
opinions were based solely on plaintiff's subjective complaints
of chronic and severe headaches.  However, Dr. Zhao did state
that plaintiff's impaired sleep was an objective sign of
plaintiff's headaches (R. at 329).  The ALJ must have a legal or
evidentiary basis for finding that the physician's opinions were
based only on plaintiff's subjective complaints.  Langley v.
Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004).  In addition, as
noted above, the signs and symptoms noted by Dr. Zhao are often
the only means available to diagnose migraine headaches.

     For the reasons set forth above, the errors by the ALJ in
his analysis of the opinions of Dr. Zhao require remand in order
for his opinions to be given proper consideration.  The ALJ will
then be required to make new findings in the five-step sequential

                              14

evaluation process, including new RFC findings, after proper consideration has been given to his opinions.

**IV.  Did the ALJ err in his credibility analysis?**

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner.  <u>Hackett v. Barnhart</u>, 395 F.3d 1168, 1173 (10th Cir. 2005).   Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  <u>Owen v. Chater</u>, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in <u>Kepler</u>.  <u>White v. Barnhart</u>, 287 F.3d 903, 909 (10th Cir. 2002); <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  <u>McGoffin v. Barnhart</u>, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for

15

the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

When this case is remanded, the ALJ shall conduct a new credibility analysis after giving proper consideration to the RFC opinions expressed by Dr. Marefat and Dr. Zhao.  In addition, the court found some problems with the ALJ's credibility analysis which need to be addressed when the case is remanded.  First, the ALJ found it noteworthy that despite his claim of poor vision, plaintiff drove without any driving restrictions (R. at 22).  On remand, the ALJ should take into consideration the testimony of plaintiff that he was able to take his license exam before the biggest majority of his vision problems started (R. at 657-658).

Second, the ALJ also found it "incredulous" that plaintiff hunted with poor vision (R. at 22).  On remand, the ALJ should take into consideration the fact that plaintiff, when asked how often and how well he fished and hunted, responded: "Not so good anymore" (R. at 206).

Third, the ALJ stated in his decision that plaintiff's

16

statement that he was unable to work because of headaches was not supported by plaintiff's own testimony.  The ALJ noted that plaintiff stopped working on October 1, 2003, but that plaintiff testified his headaches did not begin until November 2003 (R. at 19).  However, subsequently, the ALJ cited to medical records indicating that plaintiff was seen in the emergency room in September 2003 with complaints of headaches and was diagnosed with migraines, and that he was subsequently seen in October and December 2003 with complaints of headaches (R. at 20).  Thus, on remand, the ALJ must take into consideration the fact that the medical records show medical treatment for migraine headaches prior to the time plaintiff stopped working.  This medical evidence in fact contradicts testimony of the plaintiff that his headaches did not begin until November 2003, and is not inconsistent with plaintiff's contention that he was unable to work because of headaches.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the

recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on September 23, 2008.


                          s/John Thomas Reid
                          JOHN THOMAS REID
                          United States Magistrate Judge